UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT RAY MITCHELL,

    Petitioner,

-vs-                                                    Case No.  8:10-CV-818-T-27TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Petitioner, an inmate of the Florida penal system, initiated this action by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("petition") (Dkt. 1). Petitioner challenges a conviction for theft entered in 2008 by the Tenth Judicial Circuit Court, Polk County, Florida. Respondent filed a response to the petition (Dkt. 7). Petitioner filed a reply to the response (Dkt. 10).

The matter is now before the Court for consideration on the merits of Petitioner's claims. An evidentiary hearing is not required for the disposition of this matter. Rules Governing Section 2254 Cases 8(a) (2013).

### Procedural History

Petitioner was found guilty after a jury trial of theft (Resp. Ex. 1, Vol. I, p. 49).[1] He was adjudicated guilty and sentenced on March 8, 2008, to 3 years in prison followed by 12 years

---

[1] All exhibits cited by the Court throughout this Order are located in the appendix record of Petitioner's state court proceedings, docket entry 9.

supervised release (*Id.* at 79-81). On April 15, 2009, the state appellate court affirmed the judgment of conviction without written decision (Resp. Ex. 2); *Mitchell v. State*, 7 So. 3d 1107 (Fla. 2d DCA 2009) [table].

Petitioner filed a *pro se* motion for post-conviction relief in the trial court dated May 22, 2009, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("3.850 motion") (Resp. Ex. 6). On June 22, 2009, the court summarily denied the 3.850 motion (Resp. Ex. 7). On January 20, 2010, the state appellate court *per curiam* affirmed without written decision (Resp. Ex. 10).

### **The AEDPA Standard of Review**

Petitioner timely filed the instant federal petition, pursuant to 28 U.S.C. § 2244(d), on April 5, 2010, raising four grounds for relief. His petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") effective April 24,1996. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Section 104 of the AEDPA amended 28 U.S.C. § 2254 by adding the following provision:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254, as amended by the AEDPA, establishes a highly deferential standard for reviewing state court judgments. *Parker v. Secretary, Dep't of Corr.*, 331 F.3d 764 (11th Cir. 2003) (citing *Robinson v. Moore*, 300 F.3d 1320, 1342 (11th Cir. 2002)).

Review under § 2254(d)(1) is limited to the record that was before the state court that

adjudicated the claim on the merits. Section 2254(d)(1) refers to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This language requires an examination of the state court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, *i.e.*, the record before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398–1401 (2011). In addition, § 2254(e)(1) "provides for a highly deferential standard of review for factual determinations made by a state court." *Robinson*, 300 F.3d at 1342. The federal court will presume the correctness of state court findings of fact, unless the petitioner is able to rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). When measured against the AEDPA standard, it is clear that Petitioner's petition is due to be denied.

### Standard of Review for Ineffective Assistance of Counsel Claims

Petitioner claims that his trial counsel was incompetent and performed substantially below the standard guaranteed by the Sixth Amendment and that he was prejudiced as a result. A petitioner claiming ineffective assistance of counsel must meet the two-part standard for counsel's performance established by *Strickland v. Washington*, 466 U.S. 668 (1984). To establish a *prima facie* claim of ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Id*. at 687. Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Id.* at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are rare. *Waters v. Lewis*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13

F.3d 384, 386 (11th Cir. 1994)).

## Discussion

**Ground One**

Petitioner argues that he was denied due process when the state trial court denied his motion for judgment of acquittal, where the State failed to contradict his reasonable hypothesis of innocence. Petitioner also appears to argue that the evidence was insufficient to support a conviction for theft. Petitioner raised these claims in his Initial Brief on direct appeal (Resp. Ex. 2).

To the extent Petitioner relies on his state law argument of whether, under Florida law, the court should have granted his motion for judgment of acquittal because the State failed to contradict his reasonable hypothesis of innocence,[2] the Court finds that this issue is a matter of state law for which federal habeas corpus relief does not lie.[3] Federal habeas relief for a person in custody pursuant to the judgment of a state court is available only on the ground that the custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). *See also Jones v. Goodwin*, 982 F.2d 464, 471 (11th Cir. 1993). Petitioner's claim challenging the state court's failure to grant his motion for judgment of acquittal under state law presents no basis for federal habeas corpus relief because the claim presents no federal constitutional question. 28 U.S.C. § 2254(a). *See also Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to re-examine state court determinations on state-law questions."). The limitation on federal habeas review to a

---

[2] "'Where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence.'" *Darling v. State*, 808 So. 2d 145, 155 (Fla. 2002) (quoting *State v. Law*, 559 So. 2d 187, 188 (Fla. 1989)).

[3] Federal law does not mandate that the circumstantial evidence must be inconsistent with any reasonable hypothesis of innocence. *See United States v. Garcia*, 13 F.3d 1464, 1473 (11th Cir.), *cert. denied*, 512 U.S. 1226 (1994) ("The Court need not exclude every reasonable hypothesis of innocence or find guilt to be the only reasonable conclusion.") (citation omitted).

4

claim of federal constitutional error applies with equal force when a petition, which actually involves state law issues, is couched in terms of a Fourteenth Amendment due process violation. *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976).

To the extent Petitioner argues that there was insufficient evidence to support the theft conviction, when reviewing an insufficiency of the evidence claim in a habeas petition, a federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The court must assume that the jury resolved any evidentiary conflicts in favor of the prosecution, and the court must defer to that resolution. *Id.*; *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001).

The evidence presented at trial established that the State's money, $65,000.00 (distributed in two checks in the amount of $40,000.00 and $25,000.00) which was supposed to be used for the State's Summer Food Program for Children,[4] was deposited into Cathedral Faith, Inc.'s ("Church") corporate account (Resp. Ex. 1, Vol. II at pp. 192-94).[5] Because the Church did not provide documentation that the money was being used for the Summer Food Program, the State demanded return of the money (Id. at pp. 199-211). The money, however, was never returned to the State (Id. at p. 211).

Clement Davis, a deacon at the Church, testified that he was the only individual authorized

---

[4] The program provided free meals during the summer for needy children (Id. at p. 156-62). The State would advance funds to entities participating in the program to assist the entity in getting started (Id.).

[5] The evidence indicated that the Church's bank account was opened on May 27, 2004, and closed on August 31, 2004 (Resp. Ex. 1, Vol. III at p. 235). During that period, approximately $3,000.00 (mainly from church offerings) was deposited into the account along with the two checks from the State (Id. at pp. 240-60).

to write checks on the Church's bank account (Resp. Ex. 1, Vol. III at pp. 291, 332). Davis testified that on June 29, 2004, he received a phone call from Petitioner, who told him that Petitioner's wife, the pastor of the Church, Betty Mitchell, wanted Davis to withdraw all of the money from the Church's account (Id. at pp. 316-17, 338-39). Davis withdrew approximately $25,000.00 from the Church's account, then drove the money to Betty Mitchell and Petitioner's home in Bartow, Florida, and handed Petitioner the money at approximately 10:00 a.m. (Id. at pp. 317-19). Davis further testified that after he gave the money to Petitioner, Petitioner immediately left his home (Id. at pp. 320-21). Davis also testified that on June 29, 2004, several members of the Church, Betty Mitchell, Jeannette Nealy, Joci Jives, Willie Jives, Dimario Jives, Gill Davis (his wife), and Margaret Burnes were arrested (Id. at p. 320).[6]

Merrian Ellis testified that she owned a bail bonds office in Bartow (Id. at p. 363). She testified that on June 29, 2004, Petitioner and Alexander Nealy came to her office between approximately 10:30 a.m. and 12:00 p.m. (Id. at pp. 369-82). Petitioner and Nealy posted bond on behalf of all the arrested Church members except Gill Davis (Id. at pp. 381-82). Petitioner and Nealy paid Ellis between $6,000.00 and $8,000.00 that day (Id. at p. 383). Ellis testified that Petitioner was the person who had the money, and Petitioner gave some of the money to Nealy (Id. at p. 386, 390).

Petitioner testified at trial (Resp. Ex. 1, Vol. III at pp. 401-10; Vol. IV at pp. 411-26). He testified in pertinent part that Betty Mitchell was arrested at their home on June 29, 2004, at approximately 6:00 a.m. or 7:00 a.m. (Id. at pp. 403-04). After getting his children to school, he

---

[6]With the exception of Gill Davis, all of these individuals were members of Petitioner's family (Resp. Ex. 1, Vol. IV at p. 425). According to the Arrest Affidavit, Petitioner's family members and Gill Davis were arrested on June 29, 2004, "in connection with theft and related charges of McKay Scholarship and National School Lunch and Breakfast monies. . . ." (Resp. Ex. 1, Vol. I at record p. 26).

6

started calling bail bondsmen (Id. at pp. 405-06). After receiving information from a bondsman named Rico Reed, Petitioner took money from a safe that was inside his house (Id.). Petitioner had approximately $15,000.00 in the safe, which he had earned from working and had been "saving. . .for a rainy day." (Id. at p. 407). Alexander Nealy called Petitioner and told Petitioner that he had money (Id.). Petitioner "met up" with Nealy, and they went together to Rico Reed's bail bonds office (Id. at pp. 407-08). Petitioner spoke with someone at the bail bonds office and asked her if she would "take a payment" because he "didn't have all the money" and "didn't want to. . .be broke paying all [of] it." (Id. at p. 408). Petitioner could not remember if he gave Nealy any money while at the bail bonds office, but remembered that Nealy "had money." (Id. at p. 410-11). Petitioner testified that he did not call Davis on June 29, 2004, and ask him to withdraw money from the Church's bank account (Id. at p. 412). He also testified that Davis did not give him $25,000.00 (Id. at p. 414).

With respect to his involvement with the Church, Petitioner testified that he had no involvement with the Church's finances, no knowledge of the amount of money in the Church's bank account, and no knowledge of the State's School Lunch Program (Id. at pp. 412-15). On direct examination, Petitioner testified that he "did a lot of work for the church" because he was an electrician and the Church "was doing some remodeling [at that time.]" (Id. at p. 413). On cross-examination, however, Petitioner denied knowing anything about the Church or where it was located (Id. at p. 416, 418). He testified that Betty Mitchell was "associated with [sic] lot of churches" but did not think she was a pastor at a church (Id. at p. 417).

Petitioner first argues that the State failed to prove that he intended to steal the State's money. The trial court instructed the jury in relevant part as follows:

7

> To prove the crime of theft the State must prove the following two elements beyond a reasonable doubt: Number one, the defendant knowingly and unlawfully obtained or used or endeavored to obtain or endeavored to use the money of State of Florida Summer Food Program for Children; and number two, he did so with the intent to either temporarily or permanently deprive the State of Florida Summer Food Program for Children of the right to property or any benefit from it, or appropriate the property of State of Florida Summer Food program [sic] for Children to his own use or to the use of any persons not entitled to it.
>
> Proof of possession of recently stolen property under - - unless satisfactorily explained gives rise to an inference that the person in possession of the property knew or should have known that the property had been stolen.

(Resp. Ex. 1, Vol. I, p. 483).

Viewing the State's evidence in the light most favorable to the State, it is objectively reasonable to conclude that the State's evidence sufficed for a rational jury to find Petitioner committed the theft for which he stands convicted. The evidence showed that the approximately $25,000.00 Davis withdrew from the Church's bank account on June 29, 2004, was the State's money, and the money's intended use was for the Summer Food Program. At Petitioner's request, Davis delivered and gave that money to Petitioner. In Florida, "proof of possession of recently stolen property, unless satisfactorily explained, gives rise to the inference that the possessor knew, or should have known, that the property was stolen." *T.S.R. v. State*, 596 So. 2d 766, 767 (Fla. 2d DCA 1992).[7] "The unexplained possession of recently stolen property is. . .sufficient to support a theft conviction. . . ." *Id*.[8] Petitioner did not explain why he was in possession of the State's money.

---

[7] The Court notes that in *Barnes v. United States*, 412 U.S. 837 (1973) the Supreme Court held that it is not a violation of due process to instruct a jury about common-law inferences concerning possession of recently stolen property.

[8] In Florida, "property" means "anything of value." Section 812.012(4), Fla. Stat.

Rather, he denied that Davis gave him, or that he ever possessed, the State's money.[9] The jury clearly resolved that disputed question of fact in favor of the State. Therefore, Petitioner failed to rebut the inference that he knew the money was stolen because he did not explain the reason he was in possession of the State's money.

The evidence further showed that immediately after receiving the State's money from Davis, Petitioner used at least $6,000.00 to $8,000.00 of that money to bail his wife and family out of jail. The evidence demonstrated that none of the $25,000.00 was ever returned to the State.

Therefore, the evidence established that Petitioner knowingly and permanently deprived the State of its money, and appropriated the money to his or his family's use. Consequently, the evidence was sufficient to sustain the conviction for theft.

Finally, Petitioner argues that there was not sufficient evidence proving that he possessed the State's money because Davis's testimony was not credible (Dkt. 1 at pp. 23-26). Based on the guilty verdict, it is apparent that the jury gave greater weight to Davis's testimony, and found it more credible than Petitioner's testimony. This Court must defer to the jury's judgment as to the weight and credibility of the evidence. *See Wilcox v. Ford*, 813 F.2d 1140, 1143 (11th Cir. 1987) (citing *Jackson v. Virginia*, 443 U.S. at 326).

Petitioner has failed to cite to any decision of the United States Supreme Court that would indicate that the state appellate court's affirmance of Petitioner's conviction for theft was contrary to *Jackson*, or demonstrate that the decision was based on an unreasonable determination of the facts.

---

[9]The Court notes that in Florida, "when a 'taking was in the open, with no subsequent attempt to conceal it, and there was no concealment *nor denial of such taking*, but on the other hand, an express avowal thereof,' a strong presumption arises that the defendant had no felonious intent." *Ginn v. State*, 26 So. 3d 706, 712 (Fla. 2d DCA 2010). Petitioner was not entitled to this presumption as he unequivocally denied possessing the State's money.

Accordingly, the Court finds that Petitioner has failed to show that he is entitled to federal habeas relief on Ground One.

**Ground Two**

Petitioner contends that trial counsel was ineffective in failing to call two potential witnesses, Betty Mitchell and Jeanette Nealy, to testify at trial. Petitioner asserts that these witnesses would have testified that Petitioner had no knowledge of or affiliation with either the Church or the Summer Food Program. Petitioner argues that Betty Mitchell and Nealy's testimony would have established that Petitioner did not knowingly obtain the State's money with the intent to deprive the State of the money.

Petitioner raised this claim in Ground One of his Rule 3.850 motion (Resp. Ex. 6). In denying the claim, the state post conviction stated:

> In support of claim 1 Defendant asserts that his trial counsel was ineffective for failing to call Betty Mitchell and Jeanette Nealy because they could and would have testified that Defendant had no official affiliation with either the Deliverance Christian Center or the Cathedral of Faith Christian Center, Inc. Therefore, the foregoing testimony, "coupled with the Defendant's testimony that he had no knowledge of or affiliation with the Cathedral of Faith, Inc., or the Florida Summer Food Program for Children, and the fact that in trial there was no testimony or evidence that the Defendant had knowledge of or affiliation with the Cathedral of Faith, Inc., or the Florida Summer Food Program for Children or the account set up for the Summer Food Program ...would have disproved the first element of the theft the Defendant was accused of [committing.]" Motion at 4-5.
>
> First, as acknowledged by Defendant, there was ample evidence presented at trial that Defendant had no official affiliation with the churches and programs he lists. As such, any testimony regarding same by either Betty Mitchell or Jeanette Nealy would have been cumulative to that already presented. Second, the State never contended that Defendant had any official affiliation with the churches or programs listed. See transcript at 100-141, copies of which are attached. The State's theory of the case was simply that the State of Florida provided the Cathedral of Faith Christian Center, Inc., with funds to operate a "Summer Food Program for Children" and Defendant misappropriated those funds. See Id. Accordingly, whether

10

> Defendant was officially affiliated with those organizations is irrelevant to the issue of whether or not Defendant misappropriated said funds.
>
> Based on the foregoing, counsel cannot be deemed ineffective for failing to secure or present irrelevant testimony. Accordingly, claim 1 is DENIED.

(Resp. Ex. 7).

First, "[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) (citations omitted). Further, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted). Hence, the "petitioner must first make a sufficient factual showing, substantiating the proposed witness testimony." *Percival v. Marshall*, 1996 WL 107279 at *3 (N.D. Cal. March 7, 1996), *affirmed,* 106 F.3d 408 (9th Cir. 1997). "Such evidence might be sworn affidavits or depositions from the potential witnesses stating to what they would have testified." *Id*.

Petitioner has failed to present evidence of actual testimony or any affidavit from Betty Mitchell and Jeanette Nealy. Therefore, Petitioner only speculates on their proposed testimony and presents no evidence showing that they would have testified as Petitioner hypothesizes.

Second, this Court agrees with the state post conviction court's determination that Betty Mitchell and Jeanette Nealy's proposed testimony essentially would have been nothing more than cumulative to Petitioner's trial testimony that he had no affiliation with either the Church or the Summer Food Program. Petitioner offers no reason to believe that there is a reasonable probability

that Betty Mitchell and Jeanette Nealy's testimony would have changed the outcome of the trial. *See, e.g., United States v. Tavares*, 100 F.3d 995, 998, 321 U.S. App. D.C. 381, (D.C.Cir. 1996) (where the record establishes no reasonable probability that the defendant's asserted testimony would have changed the outcome of the trial, the defendant has failed to make a showing of prejudice). Consequently, Petitioner cannot show that he was prejudiced by counsel's failure to call Betty Mitchell and Jeanette Nealy to testify.

The Court finds that the state courts' denial of this claim was neither contrary to nor an unreasonable application of *Strickland*. Accordingly, Ground Two does not warrant relief.

**Ground Three**

Petitioner contends that counsel rendered ineffective assistance by not objecting to remarks of the prosecutor during closing argument. Specifically, Petitioner argues that counsel should have objected to the prosecutor's comments that the jury did not have to find that Petitioner knew that the money he told Davis to withdraw from the Church's bank account belonged to the State in order to find him guilty of theft. He further argues that the comments "negated the first element of the crime" of theft.

Petitioner raised this claim in Ground Two of his Rule 3.850 motion (Resp. Ex. 6). In denying the claim, the state post conviction court stated:

> In claim 2 of his Motion Defendant asserts that his counsel was ineffective for failing to object to certain comments by the State during its closing arguments. Specifically, Defendant asserts that the State of Florida "gave the jury the erroneous and misleading impression the Defendant did not have to know that the money belonged to the State of Florida Summer Food Program, for them to come back with a verdict of 'guilty'[,]" and counsel was ineffective for failing to object to same. Motion at 6.
>
> The record reveals that the disputed comments by the State of Florida neither

12

>misled the jury nor erroneously implied an improper standard of proof or improperly stated an element of the offense of theft. See transcript at 446-480, specifically 460-462, copies of which are attached.
>
>Accordingly, because the comments by the State of Florida were neither misleading nor erroneous, counsel cannot be deemed ineffective for failing to object to same. Based on the foregoing, claim 2 is DENIED.

(Resp. Ex. 7).

Petitioner takes issue with the prosecutor's comments that:

>Now if we get back to the crime of theft, we're talking property belonging to someone else, and in this case it happened to belong to the State of Florida Summer Food Service Program. But does Mr. Mitchell have to know that it belonged to the Summer Food Service Program?

(Resp. Ex. 1, Vol. IV at pp. 460-61). Immediately following those comments, the prosecutor gave three examples to the jury to demonstrate that they were not required to find that Petitioner knew that the money Davis withdrew from the Church's bank account and delivered to Petitioner belonged to the State (Id. at p. 461). Those examples were: 1) a car thief does not have to know the name of the individual who owns the car; rather, the thief only has to know that the car belongs to someone else; 2) a robber of a convenience store does not have to know the name of the store clerk to be guilty of robbery; and 3) a burglar of another's home does not have to know the name of the person who owns the home to be found guilty of burglary (Id.). The state post conviction court found that the prosecutor's comments were not misleading, did not erroneously imply an improper standard of proof, and did not misstate an element of the offense of theft.

In Florida, "[i]n order to prove a defendant guilty of [theft], the State is required to prove that he knowingly obtained or used, or endeavored to obtain or to use, '*the property of another*.'" *Howard v. State*, 16 So. 3d 270, 271 (Fla. 2d DCA 2009) (citing § 812.014(1), Fla. Stat. (2005))

13

(emphasis in original). Therefore, the State was required to prove (which it did) that the money Petitioner possessed belonged to someone other than Petitioner, and that Petitioner knowingly obtained or used, or endeavored to obtain or use, another's money. The State, however, was not required to prove that Petitioner knew that the money was the State's, i.e., that he knew whose property it was that was stolen.

The prosecutor essentially stated that in order for the jury to find Petitioner guilty of theft, the State had to prove that Petitioner knew the money belonged to someone else, but did not have to prove that Petitioner knew that the money belonged to the State. That was not an inaccurate statement of the law. Therefore, Petitioner has failed to demonstrate counsel's performance was deficient because he has failed to show that not one reasonably competent attorney could conclude that the prosecutor's comments were fair comments on the law and permissible.

Moreover, the state post conviction court found that the prosecutor's comments were permissible. Therefore, even if defense counsel had objected to the comments, the objection would have been overruled. Consequently, Petitioner demonstrates no prejudice from any claimed deficient performance.

Petitioner has not met his burden of proving that the state courts' resolution of this claim was contrary to or an unreasonable application of *Strickland*. Accordingly, Ground Three does not warrant relief.

**Ground Four**

Petitioner complains that counsel was ineffective in failing to present evidence that Petitioner was serving a jail sentence when the Church opened its corporate account, into which the State's funds for the Summer Food Program were subsequently deposited. Petitioner argues that this

14

evidence would have shown that he had no knowledge of or affiliation with either the Church, or the Church's corporate account.

Petitioner raised this claim in Ground Three of his Rule 3.850 motion (Resp. Ex. 6). In denying the claim, the state post conviction court stated:

> In his claim 3 Defendant asserts that his counsel was ineffective for failing to investigate, collect, subpoena or present "evidence crucial to the defense." Motion at 9. Specifically, Defendant asserts that counsel was ineffective for failing to secure "evidence in support of the fact that the Defendant had [no] knowledge or any affiliation with the Cathedral of Faith, Inc., or the Summer Food Program."
>
> Claim 3 suffers from the same logical flaw as claim 1. That is, the issue of whether Defendant had any official affiliation with either the church or the program was irrelevant to the issue of whether Defendant misappropriated funds belonging to another. *See also* transcript at 100-l41, copies of which are attached, wherein the State of Florida introduced numerous documents showing exactly what Defendant claims counsel should have shown and, therefore, Defendant fails to establish that he was prejudiced by any alleged failure of counsel to secure and present the proffered evidence.

(Resp. Ex. 7).

Petitioner cannot show that he was prejudiced by counsel's failure to introduce evidence that Petitioner was serving a jail sentence when the Church opened its corporate account. First, because Petitioner was in jail at the time the Church opened its corporate account on May 27, 2004, does not tend to prove that Petitioner had no knowledge of or affiliation with either the Church or its corporate account at the time he misappropriated the State's money on June 29, 2004. This is especially true in light of the evidence that Petitioner's wife was the pastor of the Church, and several of his family members were on the board of the Church (Resp. Ex. 1 at pp. 279-83). If Petitioner's argument is that he could not have or was unlikely to have learned about the Church or its corporate account while incarcerated, he still could have learned about the account before June

15

29, 2004, because he was released from prison on or before June 3, 2004 (see Resp. Ex. 6 at p. 9).

Second, as the state post conviction court noted, there was other evidence presented at trial demonstrating that Petitioner had no official position with the Church or involvement in the Church's participation in the State's Summer Food Program. Davis testified that Petitioner was not a director or officer of the Church (Resp. Ex. 1, Vol. III at p. 325). Petitioner testified that he had no: 1) involvement in opening the Church's bank account; 2) access to the Church's bank account; 3) knowledge of how much money was in the account, and 4) involvement in the Church's finances (Resp. Ex. 1, Vol. IV at pp. 412, 415). He also testified that he had no involvement with the Church's application to the State to participate in the Summer Food Program, and did not participate in any capacity in that program (Id. at pp. 414-15). Finally, Petitioner testified that he did not know anything about or have any involvement in the Church (Id. at pp. 416, 418, 421, 423).[10] Petitioner cannot show that he was prejudiced by counsel's failure to present largely cumulative evidence. *See Glock v. Moore*, 195 F.3d 625, 636 (11th Cir. 1999) (finding that, "where much of the new evidence that [petitioner] presents is merely repetitive and cumulative to that which was presented at trial," petitioner could not show prejudice), *cert. denied*, 531 U.S. 890 (2000); *Baldwin v. Maggio*, 704 F.2d 1325, 1334 (5th Cir. 1983) (petitioner was not prejudiced by counsel's failure to present cumulative evidence from several witnesses because "[t]heir testimony would have served only to corroborate the portrait of the man sketched by" other witnesses who had testified at sentencing).

Third, evidence that Petitioner was in jail at the time the Church's bank account was opened does not rebut the inference that Petitioner knew that the $25,000.00 Davis delivered to him was

---

[10]During closing, defense counsel argued in relevant part that Petitioner "had nothing to do with the application for the Summer Food Program. . .[and] had nothing to do with the opening of the Wachovia Bank account." (Resp. Ex. 1, Vol. IV at p. 466).

stolen.

Fourth and finally, informing the jury that Petitioner was serving a jail sentence only weeks prior to taking the State's money would have further weakened Petitioner's credibility, which was crucial to his defense that he never possessed the money. Defense counsel was not deficient for omitting this evidence, and Petitioner was not prejudiced by its omission. *See Stevens v. Zant*, 968 F.2d 1076, 1083 (11th Cir. 1992) (counsel was not deficient in deciding not to call psychologist during sentencing because counsel believed the testimony was potentially harmful); *Williamson v. Moore*, 221 F.3d 1177, 1181 (11th Cir. 2000) (counsel not ineffective for choosing not to call witnesses who may have provided "some beneficial statements," where "conflicting hurtful evidence most likely also would have been brought out"); *Johnson v. State*, 921 So. 2d 490, 501 (Fla. 2005) ("Counsel cannot be deemed ineffective for failing to present evidence that would open the door to damaging cross-examination and rebuttal evidence that would counter any value that might be gained from the evidence.").

Petitioner has not met his burden of proving that the state courts' resolution of this claim was contrary to or an unreasonable application of *Strickland*. Accordingly, Ground Four does not warrant relief.

ACCORDINGLY, it is **ORDERED** that:

1. The Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 1).

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

17

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. See 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Petitioner cannot make the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** in Tampa, Florida, on August 20th, 2013.

JAMES D. WHITTEMORE
United States District Judge

Copy to: Petitioner *pro se*
    Counsel of Record